of America et al. Mr. Latimer for the appellant, Mr. Nebuchadnezzar for the appellate. Please. Morning, Mr. Latimer. Good morning, Your Honor. Reverend Latimer on behalf of the appellant, Ronald Smith. Mr. Smith, this case arises from the lower court granting a motion for summary judgment and a 12D6 motion with respect to plaintiff's claim for intentional affliction of emotional distress. The case arises, Mr. Smith is a driver for a head of a government agency and he drops him off on Capitol Hill for some hearings. He's approached by a police officer and apparently the police officer had some problem with where he dropped him off. And he pulls away and the police officer then alleges that Mr. Smith struck him with his vehicle, brushed his leg with his vehicle, which obviously from the videotape is inaccurate. He then writes out reports indicating that he was disabled because he was struck by the vehicle, which again was a blatant falsehood and a misrepresentation of fact. Putting aside what I think is referred to somewhere in the record as an exaggeration or a falsehood about whether the car struck Mr. Rogers in the common sense use of the term, that's not required under D.C. law that there be physical contact between the car and the officer in order for there to be assault on a police officer. So if you could just put that aside and say what the district court sustained was that the officer Rogers had probable cause to believe that the individual was driving the car toward him, that he was driving it inappropriately quickly, that he was in a situation of endangering the police officer. Well, the problem with that whole concept was that the district court did this on the basis of summary judgment prior to any discovery taking place and did it basically on the plea. District court made a decision that it could look at the video and determine all of these things that the officer was put. The issue of probable cause normally, if there are facts that are indisputable, is a question for the jury. And so the district court in this situation took a video and decided that there were no undisputed facts. If you look at this video, however, we pointed out a number of things, not the least of which was an affidavit from Mr. Smith indicating what he did in terms of the vehicle is legal. His wheels were always turned to the left. He never drove towards the officer. His vehicle never came into contact with him. It could not have possibly have come into contact with his left leg because his right leg was in front of him. He was walking to the right while he was walking to the left. So all of those facts, if presented to a jury and a jury accepts those facts as true, would have precluded summary judgment. The trial court inexplicably decided that the facts should be viewed in the light most favorable to the government and not to the plaintiff. And that's the problem with the entire thing because a copy of the video has been provided to the court and there are still photographs that are in the record of this proceeding. And several the seconds as he's walking away, the wheels are turned to the left. As he crosses the car, the wheels are turned to the left. As the officer walks towards the station, the area where he's sitting, the wheels are turned to the left. When he pulls away, the wheels are turned to the left. As he's pulling out of the driveway, the wheels are turned to the left. And the officer at all times is walking to the right. So it is a reasonable juror could conclude that based upon that, that it is not true that he drove towards someone. Because if you're going left and a person is going right, some people could say, well, that doesn't mean that you're going at that person. And that is a factual determination that the trial court made that was entirely inappropriate, we believe, under the circumstances. And so that is why, that's one reason why the decision was wrong. But the trial court didn't... Your position is that he didn't, your client didn't commit an assault with a deadly weapon? Absolutely. That's not the issue. But the issue is whether a reasonable juror... No, that's not the issue either. The issue is whether it was probable cause to believe he did, which is a different question than the ultimate merits question, which is what you're arguing. Well, I think they go hand in hand. Number one, it didn't happen. And number two, there's no probable cause to believe that it happened. But again, the probable cause question is not a question for the court unless the facts are undisputed. That's not exactly... I mean, I think that Judge Randolph's question really gets to the posture in which we have to view this case, which is not did it happen, but would a reasonable officer in Rogers' position perceiving what he perceived, perceiving what he perceived, have had a basis to arrest? It may have been that Mr. Smith was looking over his shoulder, was just doing a maneuver he's done a million times, was not aiming in any way, was not in any way intending to endanger Officer Rogers. But Officer Rogers turns around, and there's a car almost upon him. And he's just had an argument with this driver, and he thinks this is extremely threatening. So that's the question. Does he, based on the undisputed evidence of record at the time, meaning the complaint and the videotape, which is all the district courts said she relied on, does that support probable cause? Or is there anything that discovery, that you've asked for in discovery as a result of your Rule 56D declaration, is there anything that could change that? And I'd love your answer, because you do appropriately have a Rule 56D affidavit from you saying, hey, this is premature, I want discovery. Can you tell us what discovery you would have wanted to take that you think could have made a difference to the probable cause of an officer perceiving what Rogers perceived? Well, I think that the record already has that, to be honest with you. Because if the officer, when you're looking at the probable cause determination, you just don't stop at what the officer says. Because the totality of the circumstances here are, if the officer actually believed that there was a reasonable basis for him to go forward just on that, he wouldn't have lied about the vehicle brushing his leg. That's not necessarily so. There's two different questions. And the second one that you raise raises a hard and interesting question about your claim on emotional injury. The subsequent lie seems to me you can't arguably separate out. And it may go to your claim that what they did caused the emotional injury you're claiming, and that shouldn't have been dismissed the way it was. But on finding a probable cause, you didn't need that. That lie was on top. They thought it was icing on the cake. We have to assess it the way they assessed it, which is the car passing closely after an argument and whether or not that was probable cause. The fact that they lied, if they did, doesn't nullify what initially prompted the arrest. Well, what initially prompted the arrest, according to the officer, was he brushed his left leg with the vehicle. That's what the officer said. No, no, no. That's what they wrote in the form. That's what the officer said. That's what the officer who was there, that was what he said. Ignacio, who was the second officer, then indicated that he viewed the videotape and that he, too, agreed with the officer's position. The issue here was always not that he came close. The issue was that he brushed his leg, his left leg, with the vehicle. And what we're saying is that if we are allowed to discover, I mean, there were several witnesses, and those witnesses were there. And, again, we have the testimony of Mr. Smith, who also gets to weigh in on this calculus of what was going on. And while the officer gets to say what the facts are, the court didn't rely on the facts. The court said that based on her viewing, no reasonable juror could make a determination that he was not driving his vehicle at the officer. And that doesn't make sense, since the wheels are turned to the left and the officer is walking to the right. And so what we're saying is, at a minimum, at a minimum, discovery should have been allowed. Can you identify, again, you may have done this, and excuse me for pressing the point, but what is the discovery that you might get that would make a difference? One of your answers, I think, was there's a lot already in the record that you would work with if you were to present this to a jury. Correct. I'm interested in whether there's anything additional people you would depose, and what kind of information, if you would elicit it from them, do you think legally would be material and make a difference? I mean, one of the things that the trial court relied upon was this supposedly heated argument that ensued. And from our perspective, there's no evidence of a heated argument as being a basis for how he might act. And so one of the things that we will get into is, why did this happen in the first place? Was there a heated argument, or was this a situation where the officer was upset with the driver, who had no call over where he'd let off a head of an agency? But as I said, there are witnesses that we did not get to depose, we did not get to talk to. At my last count, there were three witnesses who were sitting close to or at the scene. Why would it make – I don't think she's relied on – I mean, the emotion of the parties doesn't bear on the issue. The issue is, he turns around, Rogers, as we see in the videotape, the car seems to be coming toward him, it comes a little too quickly and a little too close. Whether the two had ever exchanged any words or not, does it legally bear on the probable cause inquiry? I don't think that whether or not there was an argument would bear on that. But again, when you're talking about probable cause, the probable cause issue is not one for the court unless the facts are undisputed. Right, the material facts. And the facts here, if the vehicle is not – if he didn't drive towards the officer, clearly there would not have been a basis for an assault charge. Let me take you back to your earlier response to me, where I said I think there are different questions about what he wrote on the form and what prompted the arrest. When he transmitted a call for help and backup, which resulted in the arrest, he did not claim that he was hit. He said, intentionally almost struck this officer. That's what prompted the arrest. The subsequent lie is a different, separable – and I'm trying to think that one through – it's a different, separate issue. And so you're not correct in saying the officer always claimed, I invoked an arrest because I was hit. That's not what happened. What he did was to call in and say, he almost hit me. It was intentional. Get him. And they arrested him. And I think that that is a very important point because that is exactly what he said. And then when he arrived on the scene, when Mr. Smith had been stopped, he then said he brushed my leg with the vehicle. So he changed his story from he almost hit me. Is that in the record? Yes, because he goes to the hospital. And then he fills out a form that says he's disabled. Did he say, I'm causing this arrest to happen because he brushed my leg? When he went to the scene where he was stopped, Mr. Smith. Yeah. When he goes to the scene, the officer goes to the scene, he informs the other officers that, yes, this is the individual. He brushed my left leg. And at that point, he asked to go to the hospital because he claims to have been injured. But that is the whole point of this. When you're talking about a probable cause determination, you don't just look at what the officer says and stop the inquiry. It is a catalog of the circumstances. And then when you have a videotape that shows that what he says happened, did not happen, could not possibly have happened, simply because of the physical nature and the physical position of the individual. Well, it depends when you say what he says happened. I mean, that depends on what you're buying. Intentionally almost struck the officer or brushed my leg? Well, I don't think it's the same thing. Right, they're not, but he said both. Exactly. And I think that that goes to whether or not the issue of probable cause is one for the jury or one for the court. Because it is not undisputed at that point. That is a material fact in dispute. That's a question, whether it's material. So let's say you have a case in which an officer witnesses two guys and one guy hits the other in the face. And they're continuing to tumble, but he calls in, you know, I've just seen a simple assault. Somebody hit somebody in the face. And then he fills out a form and he embellishes like crazy, he said. And then he kicked him. And then he rolled him on the street. And then he kicked him again. And then he hit him in the head again. The question is, okay, there was in the first telling an assault. There was an offense. And then there's some embellishment. And the question is so assuming, if you're with me on my hypothetical, that the first thing is in fact an arrestable offense, does it matter for the purposes of sustaining probable cause that there was embellishment? Maybe that officer should be disciplined. That's a falsehood. But legally in terms of whether the probable cause is sustainable, I'd love your thoughts on why and whether that matters. Well, let me start off by first saying that when police officers fill out false reports and they lie, I don't think that we can just say that's embellishment. Because you have an obligation to tell the truth, and you can be punished with a criminal offense. I hear you. I hear you. But having said that, what I'm saying in this case is the scenario that you give is entirely different. If, in fact, there was no dispute that an assault had occurred, whether or not the assault involved kicking, punching, or just punching is one thing. But in this situation, you have what the trial court didn't even look at and told us that she didn't look at. There was an affidavit from Mr. Smith indicating exactly what he did and what occurred from his standpoint in that he was turning his vehicle to the left at the time he turned in. He was turning his vehicle to the left at the time that he left. He never drove towards the officer. He never went towards the officer. And it was impossible for an assault to have occurred because he did not come close to his left leg. That wasn't taken into account. Well, you know, frankly, in all due respect, that is belied by the video. It just, that scenario, if you have to win on that, he picked up speed. I watched the video many times. He picked up speed. He could have made a turn that was nowhere near the officer. He started in that direction. Yeah, he started to pull sharply left because otherwise he actually hit him. But he doesn't need to actually hit him to assault him. He cut the angle as close as he could. And if all you have is that argument, you're in trouble. Well, I understand that. But I would respectfully disagree with Your Honor. And I would say to you, Your Honor, if you look at the still photographs. I'm looking at the video. If you look at the video, then what you will see is this. You will see that the wheels were turned to the left. I have no doubt he didn't want to hit him, but he was cutting it close. He did not have to cut it. But what I'm saying is he picked up speed. What I'm saying is this, Your Honor. The wheels were turned to the left before the officer got to the car. You don't pick up speed. That's true. The wheels were turned to the left. But you don't pick up speed. Yeah, right. When as a person, at least you and I don't. I don't think. You don't, do you? If someone's right there and you know from your angle positioning you're going to cut this close, you pick up speed? What I'm saying is. I don't think so. What I'm saying is the only way that you can change the direction of a vehicle is to turn the wheels. Or you can go slower. Or stop or back up or go slower. Exactly. Go slower. Right, but that is a way. You're saying that he should have done something a certain way as opposed to doing it another way. No, we're saying he shouldn't have done something. Or we're suggesting he shouldn't have done what he did. I understand. He had many options available. And one was to continue left. No, speed, speed. You pick up speed. With all due respect, that video, not only can you not hear sound, you cannot tell speed. You nor I nor anyone here can tell us whether that vehicle was traveling at 10 miles an hour or 8 miles an hour. Can I properly ask the question as I'm looking at it? Could he have gone more slowly? Of course he could have. Yeah. But that doesn't mean that you are doing something that's wrong. What that means is that you're pulling away. But could, was it reasonable for an officer in Roger's position who has back turned when Smith is pulling away from, and we see this in the video, when Smith is pulling away from the curb, turns right as it's close and is startled to see a vehicle, which even going at 8 miles an hour could kill a man, right there. Well, when you say right there, there's no way to tell the distance between him and the vehicle. If you're asking me, you show me that video and you say, would you feel comfortable standing there and having cars pass you at the speed he was going that closely? I would say, thank you. I pass on that opportunity. I mean, watching the video, you can tell enough about the distance in proportion to the size of a person and the wheels to feel uncomfortable. I have to tell you that this is, you know, Scott versus Harris looms very large in this case, in the sense that I think a video does not always tell the full truth and, you know, is like real life and we're all there. But videos also like documents, like photographs, like, you know, physical evidence is fallible, is partial, has a certain perspective. As you point out, the speed is not accurate on this video, which is why I'm probing you on what it is that you think would be material, material that would help us see the partiality of the video. And the things you've said to me so far, I don't find to be legally material in the sense that what what Smith intended, what his plans were, whether he was trying to go toward the office or just trying to turn to me, that's not material. Because the question is, does Officer Rogers standing and seeing what he saw have probable cause? You mentioned that Rogers's story is getting, you know, he seems to be telling things that didn't happen. Again, I'm not sure that's material to whether a reasonable officer objectively standing in his position had probable cause. So I guess I'm going to ask you that question one more time. Let you sit down. What would you have wanted other than a jury's judgment, actually in terms of evidence or testimony to put that video in context? Well, I think that the credibility issue and what I am, what I'm hearing from the court. Credibility on what issue? All of the issues. Again, I think that this this case turned on credibility. You have an officer. In my view, telling you that a car was coming towards him when the car is turned to the left at all times. I don't see. And I think a reasonable juror could take the position that in order for me to drive towards you, if you're going to the right, I have to at least turn the wheels. I don't I don't understand how that could be taken from a juror to make a determination as to whether that should be taken away from them. And couple that with the fact that even if you assume that that he had probable cause for the initial arrest, certainly the prosecution with false statements and the malicious that that constitutes malicious prosecution. When you have false statements, lies about what happened, you actually go to the hospital and claim that you were struck by a vehicle when you didn't. You're pulled out of an interview by your superiors to stop you before you take this too far because they know your line. And then to say that that is not an infliction of emotional distress. When this man is under prosecution, it'd be a different issue. Well, I think they all voting. Well, this is different. I understand. That's why I said aside from the probable cause only goes to the arrest. Right. And so what I'm talking about are those other things. Right. And you're trying to refute the government's claim is even if they win on probable cause, they can take it all the way through, including intentional affliction of emotional. Yeah, I think that's an interesting issue. Correct. But is that right? Because I thought that if there's probable cause that all of the claims become defective on that ground, you can't bring an intentional affliction of emotional distress for false imprisonment without probable cause. I mean, well, I think was probable cause. I think that if you learn that probable cause no longer exists and then you lie. I mean, perjurer's liability is a viable claim, but that you're you're hypothetical is assuming that we find no probable cause. What if we disagree with you? I understand that's not your position. But if we were to find that there was probable cause based on office on Mr. Smith approaching, but not brushing or hitting Rogers's leg, if that's probable cause. My question is, don't all the other claims fail because of the presence of that? Let me add to that and make sure I understand you. I thought your argument was at least implicitly that maybe probable cause or not. You don't think so, but you still have more to go, including the prosecutor's decision as to whether or not to prosecute. And in this case, that became paramount in terms of the intentional affliction of emotion. There's no guarantee a prosecutor is going to prosecute. And if someone is lying, that embellishes the case and makes it more likely that the prosecutor will continue. And the prosecutor's continuance here is what I thought you were arguing was causing. That's what his world fell apart as a consequence of the district court had sealed. Everything could have been dropped. Prosecute. The lie had been known and understood. Prosecutor would have dropped it. You're saying he kept pressing. Right. I think you have a judge bill. They're separate. Yes. Probable cause would not allow us to assume that a prosecutor may continue to prosecute when there is a known fabrication undergirding the case. Correct. Did you put a document or an affidavit in with respect to the officer's trip to the hospital? I believe the. It's a one thirty J.A. States Capitol Police report of temporary disability. But there's no hospital. I'm just wondering where do you. If you went to the hospital. There it is. If you look at the report. Health care provider for rendering treatment. Washington Hospital Center. If you look at one thirty. And then you look at the middle of the page under one. Under one. And you see health care provider. This Washington Hospital Center. What was he treated for? He claimed the car hitting him. But they look at his leg and the car didn't brush him. There's nothing there. That was the point. There was nothing there. And yet he made the claim. It was all a lie. It brushed him. He said, you know, right. I don't want to get into the detail because it seems to me it doesn't matter. But I noticed the officer limping. I'm sorry. I noticed him limping when I looked at the video. Well, that would have been interesting if he was limping. He was because he was limping. But he wasn't struck by a vehicle. That's a fact. And it certainly wasn't. I don't know that. Somebody brushed by me. Does that mean they hit me? Well, yes. That means you brush your leg. You have to make contact to brush. But you don't have to make contact to be guilty of an assault. And that's all that matters. But what I was just responding to your thing that he was limping. I mean, judge, the fact of the matter is no matter who views this video. Nobody, nobody who has sight can can say that he struck his left leg. His left leg, which is what he claimed, his left leg was not physically in a position to be struck. He didn't say I was struck. He said it was brushed. Brushed. His left leg was not in a position. The only way his left leg could have been brushed, approached or anything was if he ran through his right leg. Because his right leg was closest to the car. His left leg was farther away. Nobody with sight. Could conclude that the left leg was brushed. I see that my time is up. I would ask for a couple of minutes for rebuttal. We'll give you a little bit of time, Mr. Latimer. Mr. Namaker. May it please the court. Mark Namaker here on behalf of the appellees. I think Judge Edwards has pretty much nailed it when he said that the video belies the claim made by Mr. Smith in this case. Mr. Smith files an affidavit that is completely at odds with the video in that he says he went in the quote exact opposite direction from where the officer was. Plaintiff's counsel has focused on who's on the left and who's on the right. I think it depends on whether you're talking about moving to the right on the video or moving to the right from where the driver was. I don't think it matters whether you call it left or right or the other left or the other right. What matters is if you look at that video, it is indisputable that the right front corner of that car went from farther away from the officer to very close to the officer. And that, we believe, supports probable cause. And probable cause is fatal to his claims. Certainly as an absolute legal matter with respect to all but the intentional infliction of emotional distress claim, as a minimum as a practical matter on the intentional infliction of emotional distress claim. It's a little concerning, Mr. Namaker, that we really can't tell what the distance is and we can't tell how fast the car is going. And that not all, I mean, you must know this well from your line of work, not every video is the full and whole story. Wouldn't it have been better practice to have not done this on a motion to dismiss? I would disagree, and I'll explain why. First of all, it is absolutely clear if you look at that video that that right corner went from the width of the car, twice the width of the car, away from the officer. And it did in about a second. Now, more importantly, your Honor had asked, Judge Pillard, you had asked what the discovery was that plaintiff's counsel had indicated plaintiff needed below. And it was not relevant to the question, the core question that we all admit, which is probable cause. And that's because what he asked for was to depose the two named defendant officers. I'm looking at Joint Appendix 116, to ascertain why they took the actions that they took at the time that they did so. And the plaintiff needs to depose Ms. Bernhardt, that's the disinterested non-police witness, about her actual observations, which are somewhat at odds with the video. So, first of all, you may recall that the district judge didn't rely on Ms. Bernhardt's declaration, possibly with the exception of authenticating the video, which plaintiff agrees is authentic and urged the court to review. So let's go back to why you needed to take depositions of the officers. He wanted to find out why they acted. But it's an objective standard whether there was probable cause. So you didn't need to get their subjective intent. Although, isn't it part of Mr. Latimer's point? You said the district judge didn't rely on Ms. Bernhardt. And he's saying, yeah, but if I had been able to depose her, she might have provided useful evidence supporting my client's claim that's inconsistent with the video. And that helps me put the video in context. So the fact that the district judge didn't rely on it doesn't alone make it not material. Except that what you're asking is what information was known to the officers at the time of the arrest. That's what you have to consider on determining whether there was probable cause. Or you're going to examine qualified immunity, which some courts have called arguable probable cause. Which includes their perception and what she sees could put what they likely saw in perspective. Except that she provided her statement to the officers. And the officers provided that statement to the prosecutor. And the prosecutor was still prepared to go forward months later after hearing all this, having seen all those reports. Knowing that they were lies. Well, I have a real problem. And I heard my colleague, and I think there is case law to support the general notion that probable cause gets you all the way through. I don't think that's a viable notion in a case like this. Because one, we're talking about separable pieces of a process. The arrest is one piece. So assuming there's probable cause to justify an arrest. Okay, that's one piece. But now there's a next step. It does not follow that a prosecutor must indict and must charge merely because there's been an arrest. Certainly. So there is a next step. And if an officer is flat out lying. Let me finish. He's flat out lying. I mean, there's nothing on that video to suggest the guy was hit. If the officer, well, my view of it, ten times, is he wasn't hit. If the officer is lying, and his colleagues are saying to him, you're lying, and that all comes out. And the prosecutor is working with the lie, not knowing it's a lie. The prosecutor's decision is clearly being affected unless the prosecutor says, I'm proceeding. I'm tossing this report's nonsense. That's not the basis of my decision. If that really is a separable decision, it seems to me that can be a basis for emotional. Because his life then fell apart once that charge was made. He was done. The prosecutor pretty much did that, Judge. Where? In the December 12th discovery letter that was sent off to Mr. Smith's attorney in the criminal case. And in that discovery letter. Page.  It starts on page 72 of the joint appendix. It goes on to page 73. And it's actually the significant part here is on page 75. So this is the discovery letter that the prosecutor provides about three weeks, maybe a month after the arrest. And in this are all those reports that we've been looking at that say brushed or grazed. Right. But that also say almost struck this officer and nearly struck the officer. Right. So that effect. So on page 75 to 76, the prosecutor says, In the radio run, Officer Rogers stated that your client's vehicle almost struck him. He also said that he was able to get out of the way. Officer Rogers told Sergeant Kennedy that your client's car almost hit him. After completing his written statement, Officer Rogers told Sergeant Kennedy that your client's car brushed him. Please refer to Sergeant Kennedy's memorandum. So that happens in December. We're still prosecuting the case up to April. So it's clear that the prosecutor is looking at the video and thinking the same thing. Wait, wait, wait. Where did the prosecutor say, but I'm discounting what's fabricated. He's what he's saying is, here are all these facts. Yeah. Including the fabricated stuff. If I'm a prosecutor, I think I'm going to be more inclined to think seriously about the case. If I see there's a possibility, not only that there was an assault without a brushing, but it appears from the stuff that the officers are now giving me that he was brushed, went to the hospital. I'm going to be more interested in that case. There's nothing to indicate that the prosecutor said, I'm discounting that. That's all nonsense. Well, what we know is that the prosecutor had the full state of facts. Right. That the officers provided to him. Right. Both the ones that say, he almost struck me and he brushed me. I think what this adds to is the somewhat confusing belief we all may have, or at least plaintiff's counsel has, that brushing is the same as a full-on striking of the leg. You can brush somebody by running wind past your pant leg and feel like it's been brushed. And you go to the hospital for that? I got a wind bruise? Come on, counsel. He went to the window. I mean, you've got to concede. I understand how you might argue it, but come on, you've got to concede that. He's trying to make the claim that he was hit. Well, he was told to go to the hospital. Then what? If he was honest, he would have said there's no reason for me to go to the hospital. There was wind, but I didn't get hit. There's nothing wrong in the law enforcement system with honesty. If your case is just straightforward assault, the prosecutor would have honestly said, look, I have a straightforward assault. All this other stuff is off. That's all I'm relying on in charging. That's not what happened. But what did happen is the officers had probable cause to believe that he had assaulted the officer, and that's what he was arrested for. It doesn't matter. You're ignoring my argument. I'm saying, okay, I'll give you that for argument's sake. Okay, I'm buying that. I can separate this as an intellectual matter and say there is a next step. I view this as somewhat similar to a bank robbery where the banker says, yeah, I was robbed. That's the guy. You caught him out in the front parking lot with a mask and the gun and the money. He took $2,000 when he only took $1,000 because they think he will get $2,000 insurance or something. Could be a complete falsehood about how much money was in there, but it doesn't undo the probable cause. It doesn't undo the fact that he committed the bank robbery. But it may have some impact on the claim with respect to intentional infliction of emotional distress. Suppose the bank person is lying about something that affects sentencing. What dramatically. And it's a big lie, and the prosecutor is going with that big lie. So your hypothetical doesn't work for me. Well, I'll tell you. See, what I'm saying is there is a next step. I'm willing to, in preparing this case, I'm willing to accept your argument for argument's sake that the arrest and probable cause, that piece is one thing. But then for me, there really is an important next step. What the prosecutor's decision is separate and apart from what the officers say. And the prosecutor can be affected by what the officers say. Although here, the prosecutor, let me back up just a minute. Remember, there are two individual defendants. One's in Yasso. He's the one that filled out the police reports. Right. And he did it accurately. This is what was said. The chief of police said he thought from his angle that he brushed Roger's pant leg. The disinterested witness says he was very close to him. And she said he almost hit you. So all those facts are going to the prosecutor. And Yasso wasn't there when the assault took place. So he's reporting it. You can't fault him for giving all the information to the prosecutor. That's what he's supposed to do. Let the prosecutor figure it out. Let ultimately a jury figure it out. If that goes that far. And in this case, we know that the prosecutor got all these facts, and he was still prosecuting the case months afterwards. So it's not the kind of case where it breaches all bounds of decency. And that's what's required in the DC law. So you're saying, I'm not going to prolong this, but you're saying he still prosecuted it months later. I'm thinking like an average citizen, the impact it has. That's not a helpful notion because your life is being turned upside down. While you're in the system, possibly on a claim that you hit an officer when, in fact, you did not hit an officer. And that may be causing the prosecutor to take all this time with a case that had the prosecutor known there were fabrications. And if a jury got wind of all these lies, there's no way you'd even get a conviction on simple assault. Prosecutor had understood that initially, factored that in. The prosecutor would have said to the police immediately, done. I'm not taking this case. This guy's life wouldn't have been turned upside down. I think given the high standard for making out an intentional infliction of emotional distress claim in the District of Columbia, beyond all decency, I think this is more of an exaggeration than a completely fabricated this person. Just hope that you don't face a situation where you're having to deal with that kind of an exaggeration. Well, you will see that it was investigated, and I think appropriately so. But it doesn't mean, even if there was some shade of a falsehood in there, at most it's not a false arrest, false imprisonment, malicious prosecution. It comes down to what may be slander. And the Supreme Court has said, and Seigert v. Gilley, that's not enough to make out a constitutional violation. Wow. I mean, I think Judge Edwards' point is it's a kind of operative, you know, harnessing the criminal justice system. It is surprising to me that this was prosecuted at all. If you look at the video, it's a clear assault. And the fact that the officer might have embellished doesn't mean that prosecutors think about all kinds of things, including if I have to put these guys on the stand and they're going to be shown to be liars, a jury in D.C. is not going to buy it in a second. No matter whether the simple assault, you and I and everyone would agree, the simple assault without the lies would be a winner. That's what prosecutors do. Well, our view is, and I think the district court got it right, the fact that there was probable cause on the undisputed video in light of Scott v. Harris means that there was no false arrest here and nothing in the events that were alleged. It looked at, in light of the video, shows anything that comes close to outrageous conduct that's completely unacceptable in an ordered society. So we believe the district court correctly concluded that further discovery wasn't necessary on those irrelevant issues that plaintiffs wanted and that dismissal of the action was appropriate.  Thank you. Mr. Latimer, I think your time was fully expired. We'll give you two minutes. I think that this is an outrageous day for law enforcement when people stand up and say lying by police officers is okay. This is what the government told Judge Cushenberry in the Superior Court. The government states that it has reviewed the facts in the instant case and believes that this court, confined by a preponderance of the evidence, that a defendant did not commit the offense for which he was arrested. Now, that's what they told the judge in the Superior Court. Now they're saying that this is all, this should be ignored by this court. Tulin v. District of Columbia is a case that involved intentional... Did the prosecutor, excuse me, did the prosecutor say to the Superior Court judge, and in addition, we think by a preponderance of the evidence, you couldn't find that there was probable cause to arrest this individual? I just read what they said. This is when they submitted an order. This is when they submitted an order to the Superior Court telling the Superior Court that this man's record should be sealed. This was the government representing to the judge that he did not commit the crime. Right, I know, but that's not the question. I understand, but here we're talking about a different story. The government does not contradict itself when it says on the one hand, we have probable cause to arrest this person, and then on the other hand says we don't have enough evidence to convict. That is not a contradiction. Well, if that's what they had said, maybe you're right. But what they said was he didn't commit the crime. But that's what the events say. We arrest, and we don't concede that the arrest was unlawful. But once we look into it further, we determine this must happen every day. And we hope it happens, that when we look more fully at the evidence, this is not a case in which these crimes occurred, therefore we're dropping it. But that doesn't vitiate, necessarily, the basis for probable cause. And I do think Tulin is different. When I say Tulin, I'm talking about the intentional infriction of a motion of restraint. Tulin was based upon an officer who was off duty, who had been struck in the rear by another car, telling another officer he should be arrested. No, no, no. The officer in Tulin struck the other car and then blamed the other car, said the driver of the car that he rear-ended. No, no, no. Isn't it? No, no, no. The officer, Mr. Tulin, ran into the back of the officer's car. And the officer indicated, I'm sorry, the officer, you're right, the officer ran into the back of Mr. Tulin's car and said that Mr. Tulin was driving recklessly because he slowed down. So there he's making the whole thing up out of whole cloth. There's no probable cause. There's no probable cause. Here it's a question of probable cause A versus probable cause A plus. Well, what I'm saying is in terms of the argument was outrageousness in terms of whether or not lying constitutes outrageous conduct. And in Tulin, lying constituted outrageous conduct. In Tolson, lying constituted Tolson v. District of Columbia, also where the officer lied about Mr. Tolson not having an ID on him and Mr. Tolson was forced to stay in jail. He was a teacher and he was forced to stay in jail for an additional four hours. That was deemed to be outrageous conduct. Here, the repeated lies by the officers I would submit to you is outrageous conduct by any standard. Any officer who knowingly lies in order to gain an advantage or gain an individual being incarcerated, I would submit constitutes outrageous conduct. I appreciate the additional time. Unless there are other questions, I will sit down. Thank you, Mr. Letterman. Thank you.
judges: Pillard, Edwards, Randolph